**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

**KURT BECKER,** CASE NO.:

Plaintiff,

v.

**EQUIFAX INFORMATION SERVICES LLC, EXPERIAN INFORMATION SOLUTIONS, INC., TRANS UNION, LLC, THE BANK OF MISSOURI, CONCORA CREDIT, INC. and FIRST ELECTRONIC BANK,**

Defendants.

_______________________________________/

**PLAINTIFF'S COMPLAINT**
**JURY DEMAND**

1. Plaintiff, Kurt Becker (hereinafter "Plaintiff" or "Mr. Becker"), brings this action against Defendants Equifax Information Services LLC ("Equifax"), Experian Information Solutions, Inc. ("Experian"), and Trans Union, LLC ("Trans Union") (collectively, the "credit reporting agencies" or "CRAs"), and against Defendants The Bank of Missouri ("TBOM"), Concora Credit, Inc. ("Concora") and First Electronic Bank ("FEB") (collectively, the "Furnisher Defendants"), for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (hereinafter the "FCRA").

**JURISDICTION AND VENUE**

2. This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises under the laws of the United States.

3. Defendants' voluntary contact with Plaintiff in Florida made it foreseeable that they would be haled into a Florida court. See Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474 (1985).

4. Venue here is proper under 28 U.S.C. § 1391 because a substantial part of the events giving

rise to the claim occurred in Palm Beach County, Florida, where Plaintiff resides.

**PARTIES**

5. Plaintiff is a natural person who, at all times relevant to this action, is and was a resident of Palm Beach County, Florida, and is a "consumer" as defined by 15 U.S.C. § 1681a(c).

6. Equifax is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f). Equifax is a limited liability company incorporated under the laws of the State of Georgia that engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681a(d) to third parties.

7. Experian is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f). Experian is an Ohio corporation incorporated under the laws of the State of Ohio that engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681a(d) to third parties.

8. Trans Union is a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. § 1681a(f). Trans Union is a limited liability company incorporated under the laws of the State of Delaware, whose members are citizens of the State of Illinois, that engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681a(d) to third parties.

9. Defendant The Bank of Missouri ("TBOM") is a foreign corporation that regularly conducts business in the State of Florida or is registered to conduct business in the State of Florida with a principal place of business located at 916 North Kings Highway, Perryville, MO 63775. At all relevant times, it was a "furnisher" of information within the meaning of 15 U.S.C. § 1681s-2.

10. Defendant Concora Credit, Inc. ("Concora") is a foreign corporation that regularly

conducts business in the State of Florida or is registered to conduct business in the State of Florida with a principal place of business located at 14600 NW Greenbrier Pkwy, Beaverton, OR 97006. At all relevant times, it was a "furnisher" of information within the meaning of 15 U.S.C. § 1681s-2.

11. Defendant First Electronic Bank ("FEB") is a Utah state-chartered industrial bank that regularly conducts business in the State of Florida or is registered to conduct business in the State of Florida with a principal place of business located at 2150 South 1300 East, Suite 400, Salt Lake City, Utah 84106. At all relevant times, it was a "furnisher" of information within the meaning of 15 U.S.C. § 1681s-2.

12. Defendants use instrumentalities of interstate commerce for the purpose of furnishing and exchanging information concerning consumers, which instrumentalities are largely electronic, written, or telephonic communications that have effects on consumers and their credit reports within the State of Florida.

**STATUTORY FRAMEWORK OF THE FAIR CREDIT REPORTING ACT**

13. The Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., was originally enacted in 1970 for the purpose of regulating the collection, dissemination, and use of consumer credit information.

14. Congress found that "[i]naccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." See 15 U.S.C. § 1681(a)(1).

15. "The aim of the Fair Credit Reporting Act is to see that the credit reporting system serves the consumer as well as the industry. The consumer has a right to information which is accurate; he has a right to correct inaccurate or misleading information; he has a right to know when inaccurate information is entered into his file; he has a right to see that the information is kept

confidential and is used for the purpose for which it is collected; and he has a right to be free from unwarranted invasions of his personal privacy. The Fair Credit Reporting Act seeks to secure these rights." Hearings on S. 823 Before the Subcomm. on Financial Institutions of the S. Comm. on Banking and Currency, 91st Cong. 2 (1969).

16. A "furnisher of information" provides information about consumers' credit history to credit reporting agencies. See 15 U.S.C. § 1681s-2.

17. Congress also found that "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers" and that "[t]here is a need to insure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy." See 15 U.S.C. § 1681(a)(3), (4).

18. The FCRA was amended by Congress in 2003 by the Fair and Accurate Credit Transactions Act ("FACTA"), Pub. L. No. 108-159 (2003), in order to, among other things, "prevent identity theft, improve resolution of consumer disputes, [and] improve the accuracy of consumer records."

19. Prior to the 2003 amendments, victims of identity theft were afforded no special protections under the FCRA. As such, consumer reporting agencies ("CRAs," and also referred to herein as "credit reporting agencies") were under no obligation to treat an identity theft claim any differently than a regular dispute.

20. The 2003 amendments made it easier for identity theft victims to get information resulting from identity theft removed from their credit reports. By enacting 15 U.S.C. § 1681c-2(a), Congress required credit reporting agencies to block the reporting of any information in the file of a consumer that the consumer identifies as resulting from identity theft, not later than four business days after receiving (1) appropriate proof of identity, (2) a copy of an identity theft report, (3) the

identification of such information by the consumer, and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

21. A credit reporting agency may decline to "block" information only if the credit reporting agency reasonably determines that the consumer's request is made in error, was based on a material misrepresentation, or the consumer obtained goods, services, or money as a result of the blocked transaction. See 15 U.S.C. § 1681c-2(c)(1). If a block is declined, the credit reporting agency must then notify the consumer promptly, in the same manner as consumers are notified of the reinsertion of information under § 1681i(a)(5)(B). See 15 U.S.C. § 1681c-2(c)(2).

22. In the absence of such a determination of material misrepresentation or error, a credit reporting agency cannot decline a request to block without first requesting additional information from the consumer for the purpose of determining the validity of the alleged identity theft. See 12 C.F.R. § 1022.3(i)(1)(iii)(A).

23. "[I]f a CRA receives a police report containing detailed information as well as the signature, badge number, or other identifying information for the officer taking the report, it is not reasonable for the CRA to request additional information without 'an identifiable concern,' such as an indication that the report was fraudulent." Osada v. Experian Info. Solutions, Inc., No. 11-C-2856, 2012 WL 1050067, at *3 (N.D. Ill. Mar. 28, 2012) (citing 16 C.F.R. § 603.3(c)(1) (renumbered at 12 C.F.R. § 1022.3(i)(3)(i))).

24. The FCRA requires a credit reporting agency to "follow reasonable procedures to assure maximum possible accuracy of the information" each time it prepares a consumer report. 15 U.S.C. § 1681e(b).

25. The FCRA requires that if a consumer disputes any item of information contained in their

credit file, the credit reporting agency must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller." 15 U.S.C. § 1681i(a)(1)(A).

26. In performing the reinvestigation, the FCRA requires the credit reporting agency to "review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." 15 U.S.C. § 1681i(a)(4).

27. The FCRA also requires the credit reporting agency to provide notification of the dispute to the person who provided any item that is disputed, along with all relevant information received from the consumer regarding the dispute. 15 U.S.C. § 1681i(a)(2)(A).

28. The FCRA requirements are important, because they help credit reporting agencies ensure that the information in their consumer reports is accurate, they assure that consumers know all the information that is in their files and who has received or requested their reports, and they protect consumer privacy.

29. If the violation is negligent, the FCRA allows the consumer to recover actual damages. 15 U.S.C. § 1681o(a).

30. If the violation is willful, the consumer may recover any actual damages, or statutory damages of not less than $100 and not more than $1,000, and punitive damages. 15 U.S.C. § 1681n(a).

31. A consumer who succeeds on an FCRA action is also entitled to recover their costs and reasonable attorney fees. 15 U.S.C. §§ 1681n(a)(3), 1681o(a)(2).

32. The FCRA provides a private right of action against any person that violates the provisions

of the FCRA. See 15 U.S.C. §§ 1681o, 1681n.

33. The FCRA prohibits a CRA from furnishing a consumer report on a consumer unless it has reason to believe that the person requesting the report intends to use the information in connection with a credit transaction, insurance underwriting, or other legitimate business purpose involving the consumer on whom the information is to be furnished. 15 U.S.C. § 1681b(a)(3).

34. The FCRA prohibits a CRA from furnishing to any person a record of inquiries in connection with a credit or insurance transaction that is not initiated by a consumer. 15 U.S.C. § 1681b(c)(3).

35. "Furnishers of information" under the FCRA, pursuant to 15 U.S.C. § 1681s-2(b), must conduct a reasonable investigation into each of the written disputes that it receives from the credit reporting agencies. See also Hinkle v. Midland Credit Mgmt., Inc., 827 F.3d 1295, 1302 (11th Cir. 2016).

36. The FCRA requires credit reporting agencies to "follow reasonable procedures to assure maximum possible accuracy of" consumer reports. 15 U.S.C. § 1681e(b). If a consumer disputes information contained in their credit report, the FCRA requires a credit reporting agency to "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller." 15 U.S.C. § 1681i(a)(1)(A).

37. If the disputed information is inaccurate or incomplete or cannot be verified, the consumer reporting agency "shall … (i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the

reinvestigation; and (ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer." 15 U.S.C. § 1681i(a)(5)(A)(i), (ii).

38. If the violation is negligent, the FCRA allows the consumer to recover actual damages (§ 1681o(a)); however, if the violation is willful, the consumer may recover any actual damages or statutory damages of not less than $100.00 and not more than $1,000. § 1681n(a).

39. Under the FCRA, the term "consumer report" generally refers to any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for (i) credit or insurance to be used primarily for personal, family, or household purposes; (ii) employment purposes; or (iii) any other purpose authorized under section 1681b of this title. 15 U.S.C. § 1681a(d)(1).

40. The terms "consumer report," "credit report," and "consumer credit report" are used synonymously herein.

*National CRAs and Furnishers Communicate Consumer Disputes and Responses via the e-OSCAR Reporting Platform*

41. The FCRA requires CRAs to implement an automated reinvestigation system through which furnishers of information to the CRAs may report the results of a reinvestigation that finds incomplete or inaccurate information in a consumer's file. 15 U.S.C. § 1681i(a)(5)(D).

42. To comply with the automated dispute reinvestigation requirements of the FCRA, Trans Union, Equifax, and Experian, along with Innovis Data Solutions, Inc., developed and implemented a browser-based software system that allows the CRAs to electronically notify furnishers quickly and easily of disputed credit reporting information, and for furnishers to quickly

and easily respond to such disputes following the furnisher's investigation of the disputed information.

43. The system is commonly referred to as e-OSCAR (Online Solution for Complete and Accurate Reporting) and was designed to be Metro 2 compliant. See http://www.e-oscar.org/gettingstarted (last accessed December 9, 2025).

44. The e-OSCAR system primarily supports Automated Credit Dispute Verification ("ACDV") and Automated Universal Data Form ("AUD") processing, as well as other consumer-dispute-related processes. See http://www.e-oscar.org/gettingstarted (last accessed December 9, 2025).

45. The National CRAs provide notice of a consumer's dispute to data furnishers in the ACDV format and forward the ACDV to the furnisher through e-OSCAR.

46. If a furnisher's investigation of a consumer's dispute determines that the information in dispute is incomplete or inaccurate, the FCRA requires the furnisher to correct the information not only with the CRA that sent the ACDV, but with all other CRAs to whom the furnisher reported that information. 15 U.S.C. § 1681s-2(b)(1)(D).

47. The e-OSCAR system facilitates the furnisher's compliance with 15 U.S.C. § 1681s-2(b)(1)(D) by sending a "Carbon Copy" of an ACDV response "to each CRA with whom the [furnisher] has a reporting relationship" in addition to the response to the initiating CRA. See http://www.e-oscar.org/gettingstarted (last accessed December 9, 2025).

48. Additionally, a furnisher can manually correct a tradeline with a CRA other than the one that initiated a dispute by sending an AUD within e-OSCAR.

49. Trans Union, Experian, and Equifax each require data furnishers that report to them

respectively to register with and use e-OSCAR, and state that e-OSCAR is "in compliance with FCRA and Metro 2 standards." See https://www.transunion.com/data-reporting/support-teams (last accessed December 9, 2025).

## FACTUAL ALLEGATIONS

### I. Background Information

50. Plaintiff is a documented victim of identity theft and bank fraud involving unknown individuals unlawfully gaining access to Plaintiff's personal identifying information to obtain one or more credit accounts without Plaintiff's knowledge, authorization, or consent, causing Plaintiff to suffer adverse credit and financial consequences.

51. Plaintiff reported the identity theft to law enforcement, specifically to the Jupiter Police Department and lodged a Jupiter Police Department Event Report dated October 10, 2025, ID No. 25-242552 ("Police Report").

52. The Police Report constitutes an "identity theft report" within the meaning of 15 U.S.C. § 1681a(q)(4).

53. Plaintiff thereafter submitted written dispute letters to the credit reporting agencies by certified mail and/or contacted the credit reporting agencies directly to dispute items in his credit reports. In each written dispute, Plaintiff identified the specific fraudulent items, stated that they resulted from identity theft and did not relate to any transaction by Plaintiff, referenced his Police Report, and requested deletion of fraudulent or inaccurate information and that the agency immediately block the fraudulent information. Each written dispute was delivered to the respective agency as set forth below.

### II. Disputes with Equifax, TBOM, Concora and FEB

54. Plaintiff submitted a dispute to Equifax through its online portal which was received on or about June 6, 2025, disputing the tradeline previously reported by TBOM and Concora, Partial Account No. 1029, the tradeline previously reported by TBOM and Concora, Partial Account No. 9504, and the tradeline previously reported by FEB and Concora, Partial Account No. 1368. Equifax provided a reinvestigation result dated June 19, 2025 which wrongfully verified the three (3) disputed tradelines. Concerned with Equifax's failure to remove disputed items from his credit file, Plaintiff further disputed the wrongfully verified items in dispute letters submitted to Equifax and received on or about October 10, 2025.

55. Plaintiff mailed a further dispute letter to Equifax, which was duly received by Equifax on November 20, 2025, disputing the tradeline previously reported by TBOM and Concora, with a balance of $105,326 and a credit limit of $1,000 which was previously disputed as Partial Account No. 1368. Plaintiff specifically disputed the tradeline as fraudulent as Plaintiff did not authorize or open this account. Plaintiff also disputed an address located at 1317 Edgewater DR STE 3776, Orlando, FL 32804 and an unauthorized credit inquiry by Genesis Financial Solutions (an entity believed to be affiliated with Concora) dated January 9, 2025. Plaintiff provided Equifax with his dispute letter, a copy of his driver's license, and the Police Report. Upon reviewing a subsequent Equifax letter dated November 28, 2025, Plaintiff learned that Equifax was wrongfully refusing to block the disputed tradeline, disputed address and unauthorized inquiry.

**III. Disputes with Experian, TBOM, Concora and FEB**

56. Plaintiff submitted a dispute to Experian through its online dispute portal which was received on or about June 6, 2025, disputing the tradeline previously reported by TBOM and Concora, Partial Account No. 549806, the tradeline previously reported by TBOM and Concora, Partial Account No. 549806, and the tradeline previously reported by FEB and Concora, Partial

Account No. 532211. Experian provided a reinvestigation result dated June 11, 2025 which wrongfully verified the three (3) disputed tradelines.

57. Plaintiff mailed a further dispute letter to Experian, which was duly received by Experian on November 18, 2025, disputing the tradeline reported by TBOM and Concora, with a balance of $105,326 and a credit limit of $1,000 which was now given Partial Account No. 53211, an account number previously associated with a FEB tradeline. Plaintiff specifically disputed the tradeline as fraudulent as Plaintiff did not authorize or open this account and this disputed fraudulent account hurt Plaintiff's utilization ratio, which greatly damaged his credit score. Plaintiff provided Experian with his dispute letter, a copy of his driver's license, and the Police Report. Upon reviewing a subsequent Experian Dispute Result dated November 27, 2025, Plaintiff learned that Experian had finally agreed to delete the disputed tradeline.

**IV. Disputes with Trans Union, TBOM, Concora and FEB**

58. Plaintiff submitted a dispute to Trans Union through its online dispute portal which was received on or about June 6, 2025, disputing the tradeline previously reported by TBOM and Concora, Partial Account No. 53221107980. Trans Union provided correspondence dated June 10, 2025 which failed to remove the disputed tradeline. Trans Union claimed an investigation was completed and also canceled at Plaintiff's request. The disputed tradeline was further verified in a subsequent Trans Union credit report dated October 24, 2025.

59. Plaintiff mailed a further dispute letter to Trans Union, which was duly received by Trans Union on November 20, 2025, disputing the tradeline reported by TBOM and Concora, with a balance of $105,326 and a credit limit of $1,000 with Partial Account No. 5321107980. Plaintiff specifically disputed the tradeline as fraudulent as Plaintiff did not authorize or open this account. Plaintiff also disputed a fraudulent address at 1317 Edgewater DR STE 3776, Orlando, FL 32804,

incorrect phone numbers as well as two (2) disputed TBOM account reviews and two (2) disputed FEB account reviews. Plaintiff provided Trans Union with his dispute letter, a copy of his driver's license, and the Police Report. Upon reviewing a subsequent Trans Union Reinvestigation Report dated November 23, 2025, Plaintiff learned that Trans Union had finally agreed to delete the disputed tradeline, disputed address, disputed phone numbers but failed to remove the disputed account reviews which were verified in a subsequent Trans Union credit report dated December 24, 2025 and were only deleted months after they were disputed.

**V. The Furnisher Defendants' Failure to Investigate**

60. TBOM, Concora and FEB furnished information concerning the fraudulent tradelines to Equifax, Experian, and Trans Union. After Plaintiff disputed these tradelines as more particularly referenced above, Equifax, Experian, and Trans Union notified TBOM, Concora and FEB of the dispute by transmitting an ACDV to them through the e-OSCAR system. Upon receiving notice of the dispute, TBOM, Concora and/or FEB verified the fraudulent tradelines as accurate or otherwise failed to correct or delete the amounts or balances of these accounts, and reported that result back to Equifax, Experian, and Trans Union, notwithstanding that the tradelines were fraudulent, as the accounts were never authorized or opened by Plaintiff.

**VI. Plaintiff's Injuries**

61. Defendants' derogatory and inaccurate reporting of the above-described tradelines and inquiries on Plaintiff's credit reports negatively reflects upon Plaintiff's financial obligations, credit score, and credit worthiness to existing and potential creditors.

62. Courts have regularly held that allegations of lower credit scores, taken as true, are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III. See Pedro v. Equifax, Inc., 868 F.3d 1275 (11th Cir. 2017) ("[H]er credit score dropped 100 points as

a result of the challenged conduct. Because Pedro alleged that she suffered an injury in fact, she has standing to pursue her complaint."); Diedrich v. Ocwen Loan Servicing, LLC, 839 F.3d 583 (7th Cir. 2016) (standing where Plaintiffs alleged that they "have suffered damage to their credit and been forced to pay Ocwen greater payments and a higher interest rate"); Santangelo v. Comcast Corp., 162 F. Supp. 3d 691 (N.D. Ill. 2016) ("a depleted credit score is sufficient to constitute an injury-in-fact for the purposes of establishing Article III standing"); Rothman v. U.S. Bank Nat'l Ass'n, No. 13-03381, 2014 U.S. Dist. LEXIS 141100, 2014 WL 4966907, at *5 (N.D. Cal. Oct. 3, 2014) ("Injury to a credit score is sufficient to constitute 'actual damages'"); Adams v. Fifth Third Bank, No. 3:16-CV-00218-TBR, 2017 U.S. Dist. LEXIS 18932 (W.D. Ky. Feb. 9, 2017) ("Plaintiffs' allegations of lower credit scores … are sufficient to allege a concrete injury-in-fact for the purposes of standing under Article III."); and Coulbertson v. Experian Info. Sols., Inc., No. 16-cv-05672-RS, 2017 U.S. Dist. LEXIS 69484 (N.D. Cal. Mar. 24, 2017) ("At a minimum, Coulbertson has alleged a sufficient injury-in-fact through her claim that her credit score suffered as a result of the credit report she disputes").

63. As a result of Defendants' conduct, including but not limited to the continued publication of inaccurate information concerning tradelines, Plaintiff suffered concrete injuries, including but not limited to emotional distress and manifestations of emotional distress associated with fraudulent information remaining in his credit files, damage to his reputation for credit worthiness, loss of the ability to purchase and benefit from credit, time spent dealing with credit report disputes, expenses associated with credit report disputes, and the deprivation of his statutory rights to accurate reporting and meaningful dispute resolution. These injuries are concrete and particularized and confer standing under Article III. See Coulter v. Sagestream, LLC, 501 F. Supp.

3d 298 (2020); Norman v. Trans Union, LLC, 669 F. Supp. 3d 351 (2023); Chaitoff v. Experian Information Solutions, Inc., 79 F.4th 800 (7th Cir. 2023).

**COUNT I – VIOLATIONS OF 15 U.S.C. § 1681i**
**AGAINST TRANS UNION**

64. Plaintiff incorporates by reference paragraphs 1 through 5, 8, 12 through 53 and 58 through 63 as if fully stated herein.

65. During the relevant time frame, Trans Union received Plaintiff's disputes which requested that information be removed from his credit file.

66. Trans Union violated 15 U.S.C. § 1681i by failing to correct, update, or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

67. Trans Union's acts or omissions were willful, rendering it liable to Plaintiff for statutory and punitive

damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

68. Alternatively, Trans Union negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

**COUNT II – VIOLATIONS OF 15 U.S.C. § 1681e(b)**
**AGAINST TRANS UNION**

69. Plaintiff incorporates by reference paragraphs 1 through 5, 8, 12 through 53 and 58 through 63 as if fully stated herein.

70. Trans Union violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable

procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

71. After receiving Plaintiff's disputes, Trans Union was placed on notice that it was reporting inaccurate information, yet Trans Union continued to include the inaccurate information in Plaintiff's credit file for months thereafter.

72. Trans Union's acts and/or omissions were willful, rendering it liable to Plaintiff for statutory and punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

73. In the alternative, Trans Union negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Trans Union in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

**COUNT III – VIOLATIONS OF 15 U.S.C. § 1681i**
**AGAINST EXPERIAN**

74. Plaintiff incorporates by reference paragraphs 1 through 5, 7, 12 through 53, 56 through 57 and 60 through 63 as if fully stated herein.

75. During the relevant time frame, Experian received Plaintiff's disputes which requested that information be removed from his credit file.

76. Experian violated 15 U.S.C. § 1681i by failing to correct, update, or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

77. Experian's acts or omissions were willful, rendering it liable to Plaintiff for statutory and punitive

damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

78. Alternatively, Experian negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

**COUNT IV – VIOLATIONS OF 15 U.S.C. § 1681e(b)**
**AGAINST EXPERIAN**

79. Plaintiff incorporates by reference paragraphs 1 through 5, 7, 12 through 53, 56 through 57 and 60 through 63 as if fully stated herein.

80. Experian violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

81. After receiving Plaintiff's disputes, Experian was placed on notice that it was reporting inaccurate information, yet Experian continued to include the inaccurate information in Plaintiff's credit file until it finally deleted the disputed tradeline.

82. Experian's acts and/or omissions were willful, rendering it liable to Plaintiff for statutory and punitive

damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

83. In the alternative, Experian negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Experian in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

**COUNT V – VIOLATIONS OF 15 U.S.C. § 1681i**
**AGAINST EQUIFAX**

84. Plaintiff incorporates by reference paragraphs 1 through 6, 12 through 55, and 60 through 63 as if fully stated herein.

85. During the relevant time frame, Equifax received Plaintiff's disputes which requested that information be removed from his credit file.

86. Equifax violated 15 U.S.C. § 1681i by failing to correct, update, or delete inaccurate information in Plaintiff's credit file after receiving actual notice of inaccuracies contained therein.

87. Equifax's acts or omissions were willful, rendering it liable to Plaintiff for statutory and punitive

damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

88. Alternatively, Equifax negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

**COUNT VI – VIOLATIONS OF 15 U.S.C. § 1681e(b)**
**AGAINST EQUIFAX**

89. Plaintiff incorporates by reference paragraphs 1 through 6, 12 through 55, and 60 through

63 as if fully stated herein.

90. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit report and credit files it publishes and maintains concerning the Plaintiff.

91. After receiving Plaintiff's disputes, Equifax was placed on notice that it was reporting inaccurate information, yet Equifax continues to include the inaccurate information in Plaintiff's credit file.

92. Equifax's acts and/or omissions were willful, rendering it liable to Plaintiff for statutory and punitive

damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.

93. In the alternative, Equifax negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

**COUNT VII – VIOLATIONS OF 15 U.S.C. § 1681c-2**
**AGAINST EQUIFAX**

94. Plaintiff incorporates by reference paragraphs 1 through 6, 12 through 55, and 60 through 63 as if fully stated herein.

95. At all times relevant hereto, Equifax is and was a "consumer reporting agency," and Plaintiff was a "consumer," as provided for under the FCRA.

96. Plaintiff identified to Equifax information in his file that resulted from identity theft,

provided proof of identity, provided an identity theft report in the form of his Police Report, and stated that the information did not relate to any transaction by Plaintiff.

97. Equifax violated 15 U.S.C. § 1681c-2 by failing to block, within four business days of receipt, the reporting of the fraudulent tradeline, address, and inquiry that Plaintiff identified as resulting from identity theft.

98. Equifax's acts or omissions were willful, rendering it liable to Plaintiff for statutory and punitive damages pursuant to 15 U.S.C. § 1681n; in the alternative, Equifax negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o.

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Equifax in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

## COUNT VIII – VIOLATIONS OF 15 U.S.C. § 1681s-2(b) AGAINST TBOM

99. Plaintiff incorporates by reference paragraphs 1 through 5, 9, and 12 through 63 as if fully stated herein.

100. TBOM is a furnisher under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

101. TBOM violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes, in that it failed to review all relevant information provided by the credit reporting agencies and failed to timely communicate with the credit reporting agencies to block or delete the disputed information or tradeline.

102. As a result of TBOM's violations of the FCRA, Plaintiff has been damaged. TBOM

negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o. Additionally, TBOM committed a willful violation of the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681n(a).

103. Plaintiff is entitled to an award of prevailing-party attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2).

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against TBOM in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

**COUNT IX – VIOLATIONS OF 15 U.S.C. § 1681s-2(b)**
**AGAINST CONCORA**

104. Plaintiff incorporates by reference paragraphs 1 through 5, 10, and 12 through 63 as if fully stated herein.

105. Concora is a furnisher under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

106. Concora violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes, in that it failed to review all relevant information provided by the credit reporting agencies and failed to timely communicate with the credit reporting agencies to block or delete the disputed information or tradeline.

107. As a result of Concora's violations of the FCRA, Plaintiff has been damaged. Concora negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o. Additionally, Concora committed a willful violation of the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681n(a).

108. Plaintiff is entitled to an award of prevailing-party attorney's fees pursuant to 15 U.S.C. §§

1681n(a)(3) and 1681o(a)(2).

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against Concora in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

**COUNT X – VIOLATIONS OF 15 U.S.C. § 1681s-2(b)**
**AGAINST FEB**

109. Plaintiff incorporates by reference paragraphs 1 through 5, 11 through 63 as if fully stated herein.

110. FEB is a furnisher under the FCRA because it provides consumer credit information concerning consumers to credit reporting agencies.

111. FEB violated 15 U.S.C. § 1681s-2(b) by failing to fully and properly investigate Plaintiff's disputes, in that it failed to review all relevant information provided by the credit reporting agencies and failed to timely communicate with the credit reporting agencies to block or delete the disputed information or tradeline.

112. As a result of FEB's violations of the FCRA, Plaintiff has been damaged. FEB negligently violated the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681o. Additionally, FEB committed a willful violation of the FCRA, entitling Plaintiff to recover under 15 U.S.C. § 1681n(a).

113. Plaintiff is entitled to an award of prevailing-party attorney's fees pursuant to 15 U.S.C. §§ 1681n(a)(3) and 1681o(a)(2).

WHEREFORE, Plaintiff prays this Honorable Court to enter the following relief against FEB in the form of actual damages, statutory damages, punitive damages, attorneys' fees, litigation

expenses and costs, interest as permitted by law, and such other and further relief as the Court deems equitable and just under the circumstances.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Dated: October 8, 2026

Respectfully submitted,

**SHARMIN & SHARMIN, P.A.**

/s/ Eyal S. Eisig
Eyal S. Eisig, Esq.
eyal@sharminlaw.com
FBN: 109438
830 North Federal Highway
Lake Worth Beach, FL 33460
Main: 561-655-3925
Fax: (844) 921-1022

Attorneys for Plaintiff